E-FILED
Friday, 22 May, 2026 02:52:01 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

CATRINA LARKIN, as Independent Administrator of the Estate of EUGENE M. VARNER, Jr. deceased,

Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC. and DR. THOMAS BAKER

Defendants.

Case No. 23-cv-3015-DJQ

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY EXECUTION OF JUDGMENT AND PAYMENT OF FEES AND COSTS PENDING APPEAL**

NOW COMES Plaintiff, Catrina Larkin, as Independent Administrator of the Estate of Eugene M. Varner, Jr., deceased, by and through her attorneys, and in opposition to Defendants' Motion to Stay Execution of Judgment and Payment of Fees and Costs Pending Appeal, states as follows:

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 62(b) provides that a party may obtain a stay of judgment "by providing a bond or other security." Fed. R. Civ. P. 62(b). Ordinarily the movant must post a supersedeas bond for the full judgment amount; without one, no stay arises as a matter of right. Fed. R. Civ. P. 62(d); *BASF Corp. v. Old World Trading Co.*, 979 F.2d 615, 616 (7th Cir. 1992); *Schmude v. Sheahan*, No. 00 C 4580, 2004 WL 1179418, at *2 (N.D. Ill. May 24, 2004). The philosophy of Rule 62(b) is that "a plaintiff who has won in the trial court should not be put to the expense of defending his judgment on appeal unless the defendant takes reasonable steps to assure that the judgment will be paid if it is affirmed." *Lightfoot v. Walker*, 797 F.2d 505, 506–07 (7th Cir. 1986).

A stay is "a request for extraordinary relief, equitable in character," and "the movant bears a heavy burden." *Schmude*, 2004 WL 1179418, at *2 (quoting *Winston-Salem/Forsyth Cty. Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971) (Burger, C.J., in chambers)); *Chan v. Wodnicki*, 67 F.3d 137, 139 (7th Cir. 1995). The Court must first determine whether a stay is warranted under the four-factor test of *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)—likelihood of success on the merits, irreparable injury to the movant, substantial injury to other parties, and the public interest—before reaching the separate question of whether any bond may be waived. *Schmude*, 2004 WL 1179418, at *2. Only if a stay is warranted does the Court then apply the bond-waiver factors of *Dillon v. City of Chicago*, 866 F.2d 902, 904–05 (7th Cir. 1988). As shown below, Defendants clear neither hurdle.

## II. DEFENDANTS HAVE REPEATEDLY THREATENED INSOLVENCY

On April 22, 2026, this Court entered judgment on the Jury's award of $3,000,000 in favor of the Plaintiff and against both Defendants. In this case, it is unclear whether the Plaintiffs will ever be able to enforce this Court's judgment because the Defendants have repeatedly threatened bankruptcy. The uncertainty of enforcing that judgment would be magnified if the Defendants' present motion is granted.

The first time that the Defendants claimed insolvency, or financial difficulty, was the day before jury selection began. On April 13, 2026, in connection with an offer to settle this matter, the Defendants told the Plaintiff that Wexford had financial difficulties, and that a verdict in Plaintiff's favor may result in Wexford having to seek bankruptcy protection. During the trial, on Saturday April 18, 2026, during yet another effort to settle the matter, Wexford once again told the Plaintiff that Wexford had financial difficulties.

Since the judgment was entered by this Court, on multiple occasions, in additional conversations in which the parties have been trying to settle the matter, Wexford has repeatedly stated that it is having financial difficulties and repeatedly insinuated that it may have to seek bankruptcy protection. Additionally, during one of

these post-judgment conversations, the Plaintiff was told that if she attempts to enforce the judgment against Defendant Baker, that he too is likely to seek bankruptcy protection.

The Defendants have not provided any verification of their financial difficulties, or their pending bankruptcies. In fact, Wexford's claims of insolvency are belied by their recent agreement (an agreement made in April 2026) to post a supersedeas bond in excess of $5,200,000 in the case of *Hunter v. Ritz*, 21 CV 271, a case out of the U.S. District Court for the Southern District of Illinois. Of course, this is evidence of Defendants' ability to secure a supersedeas bond, as the Federal Rules of Civil Procedure contemplate and require of them if they seek to prolong this litigation.

Nevertheless, the Defendants' claims of financial difficulty have to be taken seriously by the Plaintiff because, if true, that would effectively prevent the Plaintiff from ever enforcing the judgment against the Defendants – something that would be more likely to come to fruition the longer that this litigation is pending.

Given the Defendants' claims of inability to pay, there are only two avenues to protect the Plaintiff in this matter: denying a stay of enforcement and allowing the Plaintiff to proceed to collection per FRCP 69 (the Plaintiff intends to file a motion to allow such collection proceedings to begin); or require the Defendants to post a bond to secure the judgment if a stay of enforcement is granted. Anything other than these two options will leave the Plaintiff with a Pyrrhic victory.

For these reasons alone, the Defendants' motion must be denied.

## III. DEFENDANTS CANNOT SATISFY THE THRESHOLD HILTON FACTORS

### 1. Defendants Have Not Made a Strong Showing of Likely Success on the Merits.

A stay requires "a strong showing" of likely success, not a recitation of arguments to be made. *Hilton*, 481 U.S. at 776. Defendants' Rule 59 motion rests on a "Golden Rule" challenge to Plaintiff's rebuttal closing argument and a Super Bowl advertising damages contention. But courts distinguish between asking jurors to stand in the plaintiff's shoes—

improper—and arguing that a verdict should reflect the true gravity of the harm—permissible advocacy. *See Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982); *Klotz v. Sears, Roebuck & Co.*, 267 F.2d 53, 54–55 (7th Cir. 1959). Whether Plaintiff's rebuttal crossed that line is a question for post-trial briefing; it does not constitute the strong merits showing required at this stage. This factor weighs against a stay.

**2. Any Injury to Defendants Is Economic, Not Irreparable.**

Defendants' sole claimed hardship is having to secure or pay a $3,000,000 judgment. "Mere economic injury does not equate to irreparable injury." *Schmude*, 2004 WL 1179418, at *3. This factor weighs against a stay.

**3. A Stay Without Security Would Substantially Injure Plaintiff.**

Without a bond, Plaintiff bears the full risk of Wexford's financial deterioration—a risk Wexford itself has made concrete by raising the prospect of bankruptcy in this litigation. This factor weighs heavily against an unsecured stay.

**4. The Public Interest Favors Enforcement of Valid Judgments.**

The public interest supports holding defendants accountable for jury verdicts and ensuring prevailing parties can collect lawful judgments. An unsecured stay would signal that well-resourced corporate defendants may delay enforcement indefinitely without consequence. This factor weighs against a stay.

## IV. DEFENDANTS HAVE SUBMITTED NO FINANCIAL EVIDENCE JUSTIFYING WAIVER OF A BOND

Even if a stay were warranted under *Hilton*, Defendants have wholly failed to justify waiving the bond. Courts in this Circuit waive the bond requirement only where the movant affirmatively demonstrates solvency. In *Northern Indiana Public Service Co. v. Carbon County Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986), the bond was waived because the appellant was a demonstrably solvent public utility with a net worth exceeding the

judgment. In *Lightfoot*, 797 F.2d at 507, the court assessed the defendant's financial condition on the record. The common thread is evidence. Here there is none.

Defendants have submitted no affidavit from a Wexford corporate officer, no insurance coverage disclosure, no financial statements, and no balance sheet. In *Schmude*, the court denied a bondless stay where the movant's "paltry submission, containing various self-serving statements" failed to provide "a basis for waiving the requisite supersedeas bond," and "[n]o realistic assessment of the scanty financial information given… can support a bondless appeal." 2004 WL 1179418, at *3. Defendants here have submitted even less than the movant in *Schmude*, who at least offered some financial information. Defendants offer nothing. Counsel's bare assertions in a brief are not evidence.

As *BASF* explains, "[a] bond secures both sides: the winner is sure to recover if the judgment is affirmed, and the loser need not fear inability to recoup if the judgment is reversed." 979 F.2d at 617. By seeking an unsecured stay, Defendants ask this Court to eliminate Plaintiff's protection while preserving their own. Absent verified financial evidence, there is no basis for this Court to make the finding that a bond is unnecessary. *Northern Indiana*, 799 F.2d at 281.

## V. EVERY DILLON FACTOR COMPELS REQUIRING A FULL SUPERSEDEAS BOND

Applying each *Dillon* factor to the facts of this case independently requires a bond.

**Factor One – Complexity of Collection.** Collection against a corporate defendant that has signaled financial distress and raised the prospect of bankruptcy is inherently complex, expensive, and uncertain. This factor favors a bond.

**Factor Two – Time Required to Collect After Affirmance.** Defendants have filed a Rule 59 motion and contemplate a full Seventh Circuit appeal. Final resolution is likely two to three years away. During that entire period, Plaintiff would be completely unsecured. This factor strongly favors a bond.

**Factor Three – Confidence in Availability of Funds.** This is the most critical factor. Wexford itself has raised the prospect of bankruptcy in this litigation, calling into question its ability to satisfy a $3,000,000 judgment. The Court cannot have the confidence required to waive security where the judgment debtor has affirmatively placed its own solvency in doubt. *Cf. Schmude*, 2004 WL 1179418, at *3 (rejecting bondless stay where movant's "assertions about his dire financial condition are unsubstantiated" and he "present[ed] nothing to indicate his personnel balance sheet or income at relevant times"). This factor strongly favors a bond.

**Factor Four – Whether Ability to Pay Is "So Plain" That Bond Would Be a Waste.** A movant whose financial condition is in question—and who has submitted no financial evidence—cannot claim its ability to pay is so obvious that a bond would be wasteful. *Schmude*, 2004 WL 1179418, at *3 (rejecting bondless stay where movant offered only "self-serving statements"). This factor favors a bond.

**Factor Five – Precarious Financial Situation and Other Creditors.** If Wexford is in a precarious financial position, requiring it to post a bond will affect other creditors—but that is precisely the point. Plaintiff, with a valid jury verdict, should not be subordinated to general creditors in a future bankruptcy. The court in *Schmude* rejected a bondless stay in part because the movant had "represented to the court [the] very reason why parties are required to post a supersedeas bond, to ensure that once a… monetary judgment has been imposed that payment will be made." 2004 WL 1179418, at *3 (quoting *BASF*, 979 F.2d at 617). Wexford's own bankruptcy representations do the same here. This factor favors a bond.

## VI. WEXFORD'S OWN BANKRUPTCY REPRESENTATIONS MAKE A BOND ESSENTIAL

Wexford has raised the prospect of bankruptcy in connection with this litigation—an acknowledgment that it may be unable to satisfy its obligations as a going concern. That representation transforms what is ordinarily an abstract collection risk into a

specific, identified threat. It is the clearest possible demonstration that Plaintiff's interests are not adequately protected without security.

As *Schmude* recognized, a movant who represents financial distress but fails to substantiate it with verified evidence has "represented to the court [the] very reason why parties are required to post a supersedeas bond." 2004 WL 1179418, at *3. Wexford has gone further, raising not merely hardship but the ultimate financial event: potential bankruptcy. Defendants cannot invoke that possibility to signal distress and simultaneously ask the Court to trust that Plaintiff is adequately protected without any security.

The consequences of a bankruptcy filing during an unsecured stay would be severe and irreversible. An automatic stay under 11 U.S.C. § 362 would immediately halt all collection efforts. Plaintiff's $3,000,000 judgment would become an unsecured claim in a bankruptcy estate, potentially recovering pennies on the dollar after years of proceedings. The supersedeas bond requirement exists in part to prevent exactly this outcome.

The choice Defendants present is simple: if Wexford is financially stable, obtaining a bond should be straightforward. If it is not, the bond is essential. Either way, a bond is required.

## VII. THE PENDING INTEREST DISPUTES DO NOT JUSTIFY ELIMINATING SECURITY

Defendants argue that Plaintiff's pending motion for prejudgment interest—including on the $1,000,000 the jury itemized as future damages—makes requiring a bond premature, and that post-judgment interest on future damages constitutes a double recovery. Neither argument eliminates the need for security.

At most, these arguments support setting the bond amount after the Court rules on Plaintiff's Rule 59(e) motion, so the bond reflects the final judgment figure. As for post-

judgment interest, 28 U.S.C. § 1961(a) mandates that it "shall be allowed" on any money judgment in a federal civil case. The statute is not discretionary, and the jury's failure to discount future damages to present value does not affect that obligation.

## VIII. IF ANY STAY IS GRANTED, FULL SECURITY MUST BE REQUIRED

If this Court grants any stay, Plaintiff requests that Defendants be required to post a supersedeas bond or equivalent security sufficient to cover:

- The full judgment amount of $3,000,000;
- Prejudgment interest as determined by the Court on Plaintiff's pending Rule 59(e) motion;
- Post-judgment interest accruing from the date of judgment; and
- Any other relief the Court may award.

The bond amount should be set after the Court rules on the interest motion so it reflects the final judgment. Plaintiff requests that the deadline to post bond run from that ruling and that no extended period be granted that would further expose Plaintiff to the collection risks Wexford's own representations have made concrete.

## CONCLUSION

Plaintiff respectfully requests that this Court deny Defendants' Motion to Stay Execution of Judgment without the posting of a supersedeas bond. Defendants bear the heavy burden of justifying this extraordinary relief and have not come close to meeting it. They have not satisfied any of *Hilton* factors required to obtain any stay, and none of the *Dillon* factors supports waiving the bond requirement. Wexford's own representations regarding potential bankruptcy make a full supersedeas bond not merely appropriate—but essential.

In the alternative, if the Court grants any stay, Plaintiff requests that it be conditioned upon Defendants posting a full supersedeas bond in an amount set by the

Court after ruling on Plaintiff's pending Rule 59(e) motion, with bond to be posted promptly thereafter.

Respectfully submitted,

*s/ Louis J. Meyer*
Louis J. Meyer
MEYER & KISS, LLC
311 West Stratford Drive
Peoria, Illinois 61614
t. 309.713.3751
f. 312.765.0100
louismeyer@meyerkiss.com

Basileios J. Foutris
FOUTRIS LAW OFFICE, LTD.
53 W. Jackson, Ste 352
Chicago, IL 60604
312-212-1200
bfoutris@foutrislaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2026, I electronically filed PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY EXECUTION OF JUDGMENT AND PAYMENT OF FEES AND COSTS PENDING APPEAL with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF participants.

By: *s/ Louis J. Meyer*
MEYER & KISS, LLC
311 West Stratford Drive
Peoria, Illinois 61614